# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: ) | Bankruptcy No. 14-23775-CMB |
| ) |  |
| HASSAN N. FARAH, ) | Chapter 11 |
| ) |  |
| Debtor. ) |  |
| ) |  |
| HASSAN N. FARAH, ) |  |
| ) |  |
| Movant/Objector, ) |  |
| ) |  |
| v. ) | Related to Doc. No. 194 |
| ) |  |
| JACQUELINE B. MARTINEZ, ) |  |
| ) |  |
| Respondent/Claimant. ) |  |

*Appearances:* Michael J. Henny, Esq., for the Debtor, Hassan N. Farah

Jacqueline B. Martinez, Esq., pro se

## MEMORANDUM OPINION

The matter before the Court is the Debtor's *Objection to Proof of Claim No. 7-2 Filed by Jacqueline B. Martinez* ("Objection").[1] Ms. Martinez filed a response in opposition, and an evidentiary hearing was held on June 15, 2016. Upon consideration of the Objection, response thereto, the evidence, testimony, and arguments presented at the evidentiary hearing, and for the reasons set forth herein, this Court finds that the Objection must be sustained and the claim of Ms. Martinez must be disallowed.

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(B). In the event that the District Court concludes that this matter is not core and the parties did not consent to adjudication by this Court, then this Memorandum Opinion and the Order entered shall constitute this Court's recommendation to the District Court.

Background and Procedural History

The above-captioned bankruptcy case was commenced on September 18, 2014, by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor, Hassan N. Farah. Not long after the case was filed, multiple disputes arose between the Debtor and Ms. Martinez. The instant dispute involves Ms. Martinez's proof of claim.

Ms. Martinez first filed a proof of claim on February 6, 2015. On April 13, 2015, Ms. Martinez filed an amended proof of claim ("Proof of Claim") in the total amount of $29,324.00, of which $19,295.00 remains in dispute. Ms. Martinez asserts that she is owed for services provided as well as goods purchased and labor performed for the benefit of the Debtor.

The Debtor does not deny that Ms. Martinez provided a number of services for his benefit; however, he filed the Objection asserting that the services performed by Ms. Martinez were done without the expectation of payment due to the parties' close, personal relationship. Furthermore, Debtor asserts that the value of the services he provided to Ms. Martinez offset her claim entirely.

In response, Ms. Martinez contends that she omitted from her Proof of Claim any services that were provided based upon the parties' close relationship. Instead, she asserts that she was knowingly retained by Debtor for the services for which she now seeks payment. Ms. Martinez denies that she owes the Debtor for services he provided for her benefit.

An evidentiary hearing was held on June 15, 2016. At that time, two witnesses were called to testify: the Debtor and David Lattner, a general contractor and friend of the Debtor. Notably, Ms. Martinez did not take the stand nor did she call any witnesses. Nearly all relevant testimony was that of the Debtor. The Debtor testified credibly as to the matters at issue, and no testimony was offered to negate the Debtor's testimony. At the conclusion of the evidentiary

2

hearing, the parties' exhibits were admitted without objection. The matter was taken under advisement and is now ripe for decision.

## Standard & Applicable Law

Pursuant to 11 U.S.C. §502(b)(1), a claim will be disallowed to the extent that the claim is unenforceable under applicable law. As it is Ms. Martinez's contention that the Debtor knowingly engaged her and agreed to pay her for the services underlying her claim, this Court examines applicable law to determine if the parties did, in fact, form such an agreement. An enforceable contract exists when parties "1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity." *See Helpin v. Trustees of the Univ. of Pa.*, 969 A.2d 601, 610 (Pa.Super.Ct. 2009) (quoting *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa.Super.Ct. 2003)). Based upon the Joint Prehearing Statement, the parties believe that there are no legal issues in dispute. This Court examines the evidence to determine if an enforceable contract exists.

When an objection to claim is filed, the burden of proof "rests on different parties at different times." *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). If the claimant alleges sufficient facts in support of her claim, then she has met her initial obligation to go forward. *Id*. The burden then shifts to the objecting party to produce sufficient evidence to negate the *prima facie* validity of the claim. *Id.* If the objector meets his burden, the burden reverts to the claimant to establish the validity of the claim by a preponderance of the evidence. *Id.* at 174. The burden of persuasion, however, always remains on the claimant. *Id.*

With this standard in mind, the Court examines the Proof of Claim filed by Ms. Martinez. Within the Proof of Claim, Ms. Martinez asserts "[s]ervices provided and litigation commenced" as the basis for her claim. Exhibit B to the Proof of Claim appears to represent the "litigation

3

commenced," which the parties stipulated is no longer at issue in this case.[2] With respect to the items listed on Exhibit A to the Proof of Claim, Ms. Martinez seeks payment for services provided and goods purchased. The Debtor did not contest the *prima facie* validity of the claim.[3] Accordingly, the Court will proceed to examine the evidence presented in light of the applicable burden.

Findings of Fact

The Debtor is an immigrant from Syria who has resided in the United States since approximately 1988. Although the Debtor speaks both Arabic and English, he requires assistance when reading and writing English. From the record, it is apparent that, especially due to these limitations, the Debtor relies upon others for assistance.[4] The credible testimony establishes that the Debtor has relied and continues to rely significantly on others to assist him with administrative and business-related tasks, such as billing and writing out checks. The credible

---

[2] In support of the Proof of Claim, Ms. Martinez attached two exhibits. Exhibit A set forth amounts allegedly owed by the Debtor in the total amount of $19,295.00. Pursuant to the parties' Joint Prehearing Statement, "[t]he parties agree that Exhibit 'B' to Respondent's Proof of Claim has been resolved . . . ." However, the Joint Prehearing Statement appears to incorrectly refer to the amount set forth in Exhibit A as $19,250.00.

[3] It is not clear from the Proof of Claim whether Ms. Martinez relies exclusively upon written contract(s) in support of her claim. No contract is attached as an exhibit thereto. Pursuant to Fed.R.Bankr.P. 3001(c)(1), other than a claim based on an open-end or revolving consumer credit agreement, when a claim is based on a writing, a copy of the writing is to be filed with the proof of claim. The Court notes that the Official Form completed by Ms. Martinez provides for the attachment of documents, such as invoices and contracts, in support of the claim. There is also space on the form to provide an explanation if said documents are unavailable. No explanation is set forth on Ms. Martinez's Proof of Claim. The Addendum to Proof of Claim states that supporting documents are available upon request.

[4] The Debtor's testimony in this regard is consistent with his statement in his Adult Disability Report to the Social Security Administration. *See* Martinez's Exhibit 6, at 385-391. Therein, the Debtor represented that he had no schooling in the United States and, while he can read and write in English, his abilities are limited. *Id.* at 391. Ms. Martinez's own letter dated December 18, 2012, acknowledges that the Debtor has "language issues." *See* Martinez's Exhibit 6, at 362. Accordingly, Ms. Martinez was aware of the Debtor's limitations.

testimony establishes that the Debtor has bartered with friends to obtain such services for his benefit.

The Debtor met Ms. Martinez, an attorney, when the Debtor's brother was in need of legal assistance, specifically, immigration assistance. Although initially a professional relationship, the Debtor and Ms. Martinez formed a friendship which developed into a romantic relationship. Throughout the course of their personal relationship, Ms. Martinez provided assistance to the Debtor and the Debtor provided assistance to Ms. Martinez without discussion of payment. The Debtor credibly testified that Ms. Martinez offered assistance, for example, in the form of legal work. In return, the Debtor, a general contractor, provided numerous contracting services to assist Ms. Martinez. Based upon the nature of their relationship, the Debtor did not expect to receive payment for these services nor did he anticipate that Ms. Martinez would seek payment from him. The Debtor credibly testified that the parties routinely did favors for one another throughout the course of their relationship and the services underlying Ms. Martinez's claim were provided based upon that arrangement without any discussion of payment. The Debtor's testimony negated the *prima facie* validity of the Proof of Claim, and the burden of proof reverted to Ms. Martinez.

In an effort to support her claim, Ms. Martinez offered the following exhibits to demonstrate Debtor's retention of her firm: (1) an Addendum to General Retainer for JBM Immigration Group, LLC, dated June 15, 2007 ("2007 Addendum to Retainer"); (2) an Engagement Letter dated October 31, 2008 ("2008 Engagement Letter"); and (3) an Agreement dated July 7, 2011 ("2011 Agreement", collectively, the "Agreements").[5] *See* Martinez's Exhibit

---

[5] The Court notes that the Proof of Claim was filed by Jacqueline B. Martinez while these Agreements appear to be between the Debtor and JBM Immigration Group, LLC, or JBM Legal, LLC. Neither party addressed this issue. As the Court finds that these Agreements do not provide support for the Proof of Claim, the Court will not address this issue further.

2, at 31-33; Martinez's Exhibit 4, at 265-66; Martinez's Exhibit 6, at 360. The Debtor credibly testified that he did not recall signing these Agreements nor did he believe that the signatures on the Agreements were his. Although checks apparently corresponding to two of the Agreements were signed by Debtor and made payable to Ms. Martinez, the Court is not persuaded that these checks contradict the Debtor's testimony regarding the Agreements. Notably, the Debtor entrusted Ms. Martinez with his checkbook during their relationship. The Debtor routinely signed blank checks and Ms. Martinez would complete the checks with payment information. No testimony or evidence refuted the credible testimony of the Debtor.

*Even if* the Court found the Debtor signed these Agreements retaining Ms. Martinez's firm, Ms. Martinez failed to meet her burden to produce sufficient evidence to persuade the Court that the Debtor engaged her to provide the services set forth in Exhibit A to her Proof of Claim. There is no question that the parties' relationship *began* as a professional relationship to obtain legal services; however, it is clear that the nature of that relationship evolved. With that change, the parties began to assist each other by performing various tasks as favors without the expectation of payment. Furthermore, the Court has examined each of the Agreements, and finds that Ms. Martinez failed to establish that the services for which she now seeks payment fall within the scope of these Agreements.

With respect to the 2007 Addendum to Retainer, the purported agreement is for immigration services. Upon review, the agreement appears to be for immigration services for Nidal, Dilal, and Iyad Farah. The "immigration work" set forth on Exhibit A to the Proof of Claim identifies work done between 2012 and 2014 for Amal, Dalal, Nour, and Wisal Farah. None of the names match. Accordingly, the 2007 Addendum to Retainer does not establish an agreement to pay for the immigration services set forth in the Proof of Claim. Furthermore, Ms.

Martinez made no attempt to demonstrate the applicability of the numerous documents within her Exhibit 2 to the 2007 Addendum to Retainer and/or the items identified in Exhibit A to the Proof of Claim. The Court does not question that Ms. Martinez provided immigration services for the benefit of the Debtor and his family; however, the credible testimony of the Debtor established that this immigration assistance was provided as a favor due to the parties' close, personal relationship.

With respect to the 2008 Engagement Letter, the agreement appears to be for representation for business matters with respect to the business of Farah Contracting, beginning specifically with negotiations and matters relating to Melange Restaurant. Exhibit A to the Proof of Claim lists a number of items under the heading of "Farah Contracting Business," with a total of $1,600.00 allegedly owed for services performed. Despite having received a $1,000.00 retainer, there is no accounting with respect to how Ms. Martinez applied the retainer and calculated the amount she claims is owed.[6] Instead, Ms. Martinez simply lists eight items, without any breakdown or explanation of fees and costs, for which she contends that she is owed $1,600.00. No effort was made to connect these items to the 2008 Engagement Letter, and the terms are not sufficiently clear for the Court to conclude that the items identified within the Proof of Claim would fall within the scope of representation. To the extent the documents contained within Ms. Martinez's Exhibit 4 were intended to support this portion of the claim for services provided for Farah Contracting, the documents are insufficient to meet that burden. Ms. Martinez offered no testimony to assist the Court in determining how the 2008 Engagement Letter relates to the Proof of Claim and the exhibits submitted.

---

[6] The significance of any payment to Ms. Martinez is questionable as Ms. Martinez controlled the Debtor's checkbook for a period of time.

With respect to the 2011 Agreement, the services to be provided were vaguely identified as "Representation in General Practice Matter" and "representation in regards to a contractual mater." Ms. Martinez did not provide any testimony or evidence to define the "matter" and clarify the scope of the representation. Although contained within Ms. Martinez's Exhibit 6, Ms. Martinez made no effort to establish any connection between the 2011 Agreement and the other documents within her Exhibit 6. The Court notes that the Adult Disability Report represents that (1) the Debtor completed the report on his own behalf and (2) Ms. Martinez is his "other contact" and "friend." *See* Martinez's Exhibit 6, at 386. While Ms. Martinez may have appeared as Debtor's representative in proceedings related to his appeal of the denial of medical assistance, the exhibits do not establish that Ms. Martinez was retained to do so for payment. Accordingly, the Court finds that the 2011 Agreement does not assist Ms. Martinez in meeting her burden.

Although Exhibit A to the Proof of Claim sets forth a claim for "legal services performed between 2010 and 2014" in the amount of $17,665.00, only four invoices were submitted as evidence. These invoices were limited to services provided in 2012 and 2013. *See* Martinez's Exhibit 9, at 435-38. Despite the wide array of services included in the claim, these invoices by JBM Legal, LLC, appear to relate solely to work done for certain rental properties totaling only $2,800.00, a small fraction of the amount claimed by Ms. Martinez.[7] Despite the preparation of the invoices, there is no evidence that the invoices were sent to and received by the Debtor at or around the dates shown on the invoices. Furthermore, the Debtor credibly testified that he did not receive invoices for services provided by Ms. Martinez until their personal relationship ended. No credible testimony or evidence was presented to refute the Debtor's testimony.

---

[7] The Court notes that some of the services listed in JBM Legal, LLC's invoices do not appear to be "legal" in nature. For example, amounts are invoiced for showing apartments, taking photographs, and posting on Craigslist. *See* Martinez's Exhibit 9, at 435-38.

In addition to legal services, Ms. Martinez also asserts that she is owed for goods purchased and labor performed at certain property owned by Debtor located at 13057 West Lake Road, East Springfield, Pennsylvania ("West Lake Property"). Specifically, Ms. Martinez claims that she is owed for gardening supplies, labor, and related expenses for orchard and crop planting at the West Lake Property totaling $1,630.00. Very little evidence was presented regarding this portion of Ms. Martinez's claim. Ms. Martinez submitted an exhibit which indicates that she placed an order for seedlings in the total amount of $181.26. *See* Martinez's Exhibit 7. Although the Debtor was aware that Ms. Martinez planted some trees and other plants at the West Lake Property, there is no evidence that he requested Ms. Martinez to take such action or agreed to pay for any of these items or services. Once again, Ms. Martinez's actions appear to be consistent with the intimate relationship between these parties. The credible evidence and testimony supports the conclusion that Ms. Martinez chose to plant items on the property without any expectation of reimbursement or payment for services.

With the foregoing facts in mind, the Court resolves the pending Objection.

## Analysis

As the Debtor's credible testimony negated the *prima facie* validity of Ms. Martinez's Proof of Claim, the burden of proof reverted to Ms. Martinez. Although all of Ms. Martinez's exhibits were admitted, she offered no testimony to assist the Court in understanding how the exhibits are intended to support her claim.[8] Instead, Ms. Martinez chose to rely upon the mere existence of certain documents to establish the validity of her claim without any explanation. Upon review, Ms. Martinez failed to produce sufficient evidence to establish the formation of

---

[8] Notably, some of her exhibits undermine her claim. For example, Ms. Martinez asserts that she is owed $1,400.00 for "2010 and 2011 Taxes." Ms. Martinez's Exhibit 3 is identified as "Tax documents." For 2011, it appears that the Debtor's taxes were completed using TurboTax. The Form 1040 indicates that the taxes were "self prepared" without any identification of a paid preparer. *See* Martinez's Exhibit 3, at 133. *See also* 2011 Pennsylvania Tax Return, Martinez's Exhibit 3, at 148.

enforceable contract(s) for the services set forth in her Proof of Claim. Notably, much of the documentation upon which Ms. Martinez relies could only be used to support the existence of contract(s) between the firm, a limited liability company, and the Debtor. The evidence, however, does not support a finding that the services at issue were provided pursuant to any contract. To the contrary, the credible evidence establishes that these services were provided based upon the close, personal relationship of the parties as opposed to a professional relationship. Accordingly, the claim must be disallowed.

As the Court finds that Ms. Martinez failed to meet her burden with respect to her claim, the Court need not address the Debtor's contention that the value of services he provided to Ms. Martinez would offset any allowed claim. The Court notes that, due to the filing of the Proof of Claim, the Debtor created an invoice for services that he performed for Ms. Martinez for this purpose. The Debtor credibly testified that, had he known that Ms. Martinez intended to seek payment from him, he would have sought payment from her as well. As the Debtor has primarily worked in the field of general contracting, most of the items are related to that type of work. Consistent with their relationship, the Debtor and Ms. Martinez assisted each other in their respective fields of expertise and also by doing favors for each other that are typical of individuals in an intimate relationship. Neither party has shown a basis for recovery from the other. The instant dispute appears to be nothing more than a consequence of the breakdown of the parties' personal relationship.

[*Remainder of Page Intentionally Left Blank*]

Conclusion

Based upon the foregoing, this Court finds that Ms. Martinez failed to meet her burden. The Objection is sustained, and Ms. Martinez's claim is disallowed. An Order will be entered consistent with this Memorandum Opinion.

Dated: July 14, 2016                               /s/ Carlota M. Böhm
                                                   Carlota M. Böhm
                                                   United States Bankruptcy Judge

**MAIL TO:**

Office of the United States Trustee
Michael J. Henny, Esq.
Jacqueline B. Martinez, Esq.

FILED
7/14/16 4:27 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA